IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:03cr259-MHT |
| LEON CARMICHAEL, SR. | ) | (WO) |

OPINION

Defendant Leon Carmichael, Sr. was convicted of conspiring to distribute marijuana and conspiring to commit money laundering.  This criminal case is again before the court, this time on petitioner Reese & Howell, Inc. ("R & H")'s petition, filed pursuant to 21 U.S.C. § 853(n), to validate its alleged third-party interest in the real property known as the Carmichael Center.  For the reasons that follow, R & H's petition will be denied.

I. BACKGROUND

In their stipulation of facts[1], the parties agree on the following time line of relevant events:

<u>November 22, 2002</u>:  R & H, a construction company, and Carmichael signed a contract according to which R & H agreed to provide materials and labor to improve the property known as the Carmichael Center.

<u>November 2002 through October 2003</u>:  R & H provided materials and labor for which Carmichael was billed $ 182,367.28.  Carmichael never paid for these materials and labor.

<u>November 19, 2003</u>:  R & H filed a materialman's lien against the Carmichael Center.  The lien was duly executed and recorded.  On the same day, Carmichael was indicted by a federal grand jury on a count of conspiracy to possess with intent to distribute marijuana "from a date unknown to the Grand Jury, but

---

1. The parties agreed to the submission of this matter to the court on their stipulation of facts (Doc. No. 609), rather than through an evidentiary hearing.

continuing up to on or about the 17th day of November, 2003." The indictment included a forfeiture allegation implicating the Carmichael Center, among other properties.

December 19, 2003: The United States filed a lis pendens in the probate court of Montgomery County giving notice of its forfeiture action against the Carmichael Center.

January 6, 2004: R & H filed a civil action against Carmichael in state court, asserting various causes of action including breach of contract, and seeking to enforce the materialman's lien. The United States has never been made a party to this state-court action, which remains pending in state court.

August 17, 2004: A federal grand jury returned a superceding indictment against Carmichael on two counts, one a conspiracy to launder money and the other a conspiracy to possess with intent to distribute more than 3,000 kilograms of marijuana "from in or about 1993

... up to on or about the 17th day of November, 2003." The original forfeiture allegation was repeated in this indictment.

<u>June 17, 2005</u>: Carmichael was convicted by a jury on both counts of the superceding indictment. Evidence produced during trial established that the Carmichael Center property was used as early as 2001 to receive and store some portion of the marijuana for which Carmichael kiwas found accountable, and as a delivery point for drug proceeds.

<u>August 15, 2005</u>: This court preliminarily ordered Carmichael to forfeit the Carmichael Center to the United States pursuant to 21 U.S.C. § 853.

<u>September 13, 2005</u>: R & H timely filed its petition seeking adjudication of its interest in the property pursuant to § 853.[2]

---

   2. Although the parties refer to R & H's petition as a petition for validation of third-party interest, the petition is actually styled as "Petitioner's claim of interest in property subject to second preliminary order
(continued...)

## II. LEGAL STANDARD

21 U.S.C. § 853(n) governs third-party interests affected by the forfeiture of property in a criminal proceeding. The third-party petitioner bears the burden of proof to establish by a preponderance of the evidence that it has a legal interest in the property that renders the order of forfeiture invalid in whole or in part. Under the statute, such legal interest may come about in two ways: either, according to subsection A of § 853(n)(6), the petitioner must show that it had a superior interest in the property at the time of the acts giving rise to forfeiture or, according to subsection B of § 853(n)(6), it must show that it was a bona fide purchaser for value without reason to know that the property was subject to forfeiture.[3]

---

2. (...continued)
of forfeiture."

3. 21 U.S.C. § 853(n)(6) reads:
(continued...)

21 U.S.C. § 853(c) contains a 'relation back' provision under which "all right, title, and interest in the [forfeited] property ... vests in the United States

---

3.  (...continued)
    "If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--

    (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

    (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonable without cause to believe that the property was subject to forfeiture under this section;

    the court shall amend the order of forfeiture in accordance with its determination."

upon the commission of the act giving rise to forfeiture." Finally, "federal law decides what interests are subject to forfeiture under section 853 [and] state property law defines what those interests are in the first instance." <u>United States v. Kennedy</u>, 201 F.3d 1324, 1334 (11th Cir. 2000).

## III. DISCUSSION

R & H's claim arises under subsection A of 21 U.S.C. § 853(n)(6); R & H alleges that its interest in the Carmichael Center was superior to that of Carmichael at the time the interest of the United States vested through the commission of the acts giving rise to forfeiture. R & H's interest takes the form of a materialman's lien which, when perfected, is a legally enforceable interest in real property. 1975 Ala. Code § 35-11-226.

Under Alabama law, a materialman's lien can be perfected only through compliance with three essential

7

steps: (1) provision of statutory notice to the owner of the property; (2) filing of a verified statement of lien in the probate office of the county where the improvement is located; and (3) filing of a suit to enforce the lien.  Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565 So. 2d 138, 141 (Ala. 1990).  It is not disputed that R & H complied with these steps within the relevant statutory time periods.

Once these steps are taken, "the lien relates back to the date that the materials or labor was provided." Metro Bank v. Henderson's Builders Supply Co., 613 So. 2d 339, 340 (Ala. 1993).  Therefore, assuming that R & H holds a perfected materialman's lien, that lien relates back to November 2002, when R & H first began delivering materials used in construction of the Carmichael Center.[4]

---

4. The government does not agree that R & H's materialman's lien has been perfected, and argues that, despite Metro Bank's language, the lien remains inchoate until the suit to enforce it in state court is prosecuted
(continued...)

R & H devotes much of its argument to pointing out that, under § 853(n)(6)(A), the relevant inquiry is whether its interest in the property was superior to that of Carmichael, and not whether its interest was superior to that of the United States, as the government repeatedly asserts in its briefs.  This is true but irrelevant to the case.

The statute does not simply require the court to adjudicate the status of property interests in the

---

4.  (...continued)
to final judgment. Moreover, the government argues that any party not joined in that suit is not bound by the final judgment.  The court does not need to reach these questions because, as will be shown, R & H's interest in the Carmichael Center was not superior to Carmichael's at the time of the criminal activity even assuming, as the court does, that the materialman's lien has been perfected.

In the government's original response to R & H's petition (Doc. No. 579), it also argued that the property description in R & H's lien statement was insufficient under state law, therefore rendering the lien ineffective against the government's interest in the Carmichael Center.  The government does not now contest the validity of the property description in R & H's lien.  See United States of America's brief regarding R & H's petition to validate third party interest (Doc. No. 619), p. 2.

9

abstract; rather, it specifies that the court must determine the status of the asserted property interests as those interests existed "at the time of the commission of the acts which gave rise to the forfeiture of the property." R & H correctly points out that its lien attached against the property prior to the end of the period of criminal activity charged in the indictment, meaning that R & H's interest predates at least a portion of the criminal acts giving rise to forfeiture. But the evidence produced at trial showed that the Carmichael Center was used as early as 2001 in connection with the criminal activity for which Carmichael was indicted and convicted. Because R & H's lien, if valid, relates back only to November 2002, when R & H first began supplying materials and labor, R & H had no interest whatsoever in the Carmichael Center at the time of the beginning of the illegal use in 2001. Therefore, R & H's interest, at that time, was by definition not superior to that of Carmichael.

Had the illegal use ended before R & H's provision of materials and labor in 2002, there could be no dispute that the United States would be entitled to the property, since R & H would have had no interest superior to Carmichael's at the time of the illegal acts in 2001, and the United States' own interest vests "upon the commission" of the illegal acts.  21 U.S.C. § 853(c).  R & H does not attempt to explain why the criminal activity that occurred after it gained an interest in the property should somehow erase the legal effects of the criminal activity that occurred before its interest attached.  The continuing nature of the illegal activity in this case does not back-date R & H's interest to a time prior to 2001, when that activity began.

## IV. CONCLUSION

Because R & H had no vested or superior interest in the Carmichael Center at the time the acts giving rise

11

to forfeiture of the property began, R & H cannot meet its burden under 21 U.S.C. § 853(n).[5]

An appropriate judgment denying R & H's petition will be entered.

DONE, this the 14th day of March, 2006.

                                               /s/ Myron H. Thompson
                                      **UNITED STATES DISTRICT JUDGE**

---

5. This court's adjudication of R & H's interest in the Carmichael Center under 21 U.S.C. § 853 does not, of course, in any way impact R & H's other claims, including breach of contract, currently pending in state court.