IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA      )
                              )
      v.                      )  CRIMINAL ACTION NO.
                              )      2:03cr259-MHT
LEON CARMICHAEL, SR.          )          (WO)
```

### OPINION

Defendant Leon Carmichael, Sr. was convicted of
conspiring to distribute marijuana and conspiring to
commit money laundering.  On March 14, 2006, the court
issued an opinion and judgment denying a petition, filed
by Reese & Howell, Inc. ("R & H"), to validate third-
party interest in the Carmichael Center, which had been
owned by defendant Carmichael and forfeited pursuant to
21 U.S.C. § 853 as a result of his conviction.  United
States v. Carmichael, 419 F.Supp.2d 1376 (M.D. Ala.
2006).  This criminal case is again before the court,
this time on petitioner R & H's motion to alter, amend or

vacate the judgment.  For the reasons that follow, the motion will be granted in part and denied in part.

## I. BACKGROUND

The facts are set forth in more detail in the court's March 14 opinion, <u>Carmichael</u>, 419 F.Supp.2d at 1377-1378, and will be summarized here only briefly.  On November 19, 2003, Carmichael was indicted; the indictment included a forfeiture allegation implicating the Carmichael Center, among other properties.  On the same day, R & H filed and had recorded a materialmen's lien against the center for $ 182,367.28 in materials and labor R & H had provided for the center and for which it had not been paid.  The work had been done pursuant to a written contract between Carmichael and R & H.  A month later, on December 19, 2003, the United States filed a lis pendens in the probate court of Montgomery County giving notice of the forfeiture action against the center.

2

On January 6, 2004, R & H filed a civil action against Carmichael in state court, seeking, among other things, to enforce the materialmen's lien.  The United States has never been made a party to this state-court action, which remains pending.

On June 17, 2005, Carmichael was convicted by a jury. Evidence produced during trial established that the center was used as early as 2001 to receive and store some portion of the marijuana for which Carmichael was found accountable, and as a delivery point for drug proceeds.  Two months later, on August 15, based on the conviction, the court preliminarily ordered Carmichael to forfeit the center to the United States pursuant to 21 U.S.C. § 853.

On September 13, 2005, R & H timely filed a petition seeking validation of its interest in the center pursuant to § 853, and, on March 14, 2006, the court entered an opinion and judgment denying R & H's petition.  R & H now asks that the court reconsider its decision.

3

## II. DISCUSSION

Federal Rule of Civil Procedure 59(e), which authorizes a motion to alter or amend a judgment after its entry, provides no specific grounds for relief; rather, "the decision to alter or amend judgment is committed to the sound discretion of the district judge." American Home Assur. Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1238-39 (11th Cir. 1985). Here, R & H contends that the court misapplied the law to the facts.

In its March 14 opinion, the court analyzed R & H's interest in the center under 21 U.S.C. § 853(n), which governs third-party interests affected by the forfeiture of property in a criminal proceeding. The third-party petitioner in a § 853(n) proceeding bears the burden of proof to establish by a preponderance of the evidence that it has a legal interest in the property that renders the order of forfeiture invalid in whole or in part.

Under § 853(n), such legal interest may come about in two ways: under subsection (n)(6)(A) to 21 U.S.C. § 853,

4

the petitioner must show that it had a superior interest in the property at the time of the acts giving rise to forfeiture; or, under subsection (n)(6)(B) to 21 U.S.C. § 853, it must show that it was a bona fide purchaser for value without reason to know that the property was subject to forfeiture.[1]   21 U.S.C. § 853(c) contains a

---

1.   21 U.S.C. § 853(n)(6) reads:

> "If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonable without cause to believe that the property was
>
> (continued...)

'relation back' provision under which "all right, title, and interest in the [forfeited] property ... vests in the United States upon the commission of the act giving rise to forfeiture."

In it March 15 opinion, the court held that, under subsection (n)(6)(A), R & H had no vested or superior interest in the Carmichael Center at the time of the criminal acts giving rise to forfeiture of the property. <u>Carmichael</u>, 419 F.Supp.2d at 1379.  R & H's interest, if valid, vested only after the criminal acts charged in the indictment began.[2]  <u>Id</u>.

---

1.   (...continued)
     subject   to   forfeiture   under   this
     section;

     the court shall amend the order of
     forfeiture in accordance with its
     determination."

2.   "Federal law decides what interests are subject to forfeiture under section 853 [and] state property law defines what those interests are in the first instance." <u>United States v. Kennedy</u>, 201 F.3d 1324, 1334 (11th Cir. 2000).   The court found that, under state law, a perfected materialmen's lien relates back to the date that materials or labor was provided to the property: in
(continued...)

6

R & H now challenges both the holding that it had no interest in the center under subsection (n)(6)(A), and the court's failure to analyze its interest as a potential bona fide purchaser under subsection (n)(6)(B). The court declines to revisit its holding in the earlier order, and R & H's motion to alter is denied to the extent that it requests the court to reconsider its analysis of R & H's interest under 21 U.S.C. § 853(n)(6)(A).

Admittedly the court did not consider the theory of recovery under subsection (n)(6)(B), but this was because R & H did not explicitly argue it.  The government's response to R & H's motion to alter is devoted entirely to the argument that  R & H should not now be permitted to raise a new claim that could have been argued before, thereby taking 'two bites at the apple.'  R & H counters that its argument is not new, because its original

---

2.   (...continued)
this case, November 2002.  <u>Carmichael</u>, 419 F.Supp.2d at 1379.

7

petition to validate third-party interest claimed all the protections of § 853(n)(6), even though R & H only advanced specific arguments under subsection (n)(6)(A).

While it is not the court's role to litigate the case for the parties, the court finds that the question of R & H's status as a bona fide purchaser was technically before the court in R & H's original petition; indeed, the government's original brief in opposition to R & H's petition to validate, while devoted largely to countering petitioner's express arguments, does include a paragraph (at p. 10) arguing that R & H should not be considered a bona fide purchaser for value, thereby indicating that the issue was before the court in at least a general sense.  Thus, it would not have been inappropriate for the court to rule on R & H's subsection (n)(6)(B) argument, despite the fact that R & H did not actively advance that argument.  And unlike the interests described in subsection (n)(6)(A), the interests of

qualifying bona fide purchasers under subsection (n)(6)(B) are protected no matter when they vested.

As a result, the court finds, under Rule 59(e), that it should have considered R & H's argument under subsection (n)(6)(B). Because, as will be shown below, R & H's interest should be conditionally validated, alteration of the judgment is appropriate because it serves the useful purpose of vindicating existing rights.

R & H's contention that it is a bona fide purchaser for value under subsection (n)(6)(B) rests on three distinct but cumulative arguments: (1) a perfected materialmen's lien is a secured interest; (2) secured creditors are purchasers for value under § 853(n); and (3) R & H has a perfected materialmen's lien under Alabama law. The government has challenged only the last of these arguments, stating that R & H does not have a perfected or enforceable lien and is therefore an unsecured creditor. The government has advanced no argument about whether a perfected lien, should it exist,

9

would in fact grant secured creditor status, nor whether such status means that R & H could be considered a purchaser for value.

### A. Perfected lien as a secured interest

The least thorny of the issues presented is whether a materialmen's lien, if valid, would grant R & H secured creditor status against Carmichael and his center. A materialmen's lien--also known as a mechanic's lien--is defined as "a lien on real property in favor of a person or entity furnishing labor or materials for the erection of buildings or making improvements on real property." Keith C. Kantack, A Guide To Mechanics' Liens in Alabama, 61 Ala. Law. 202 (2000). In Alabama and elsewhere, such liens were created by statute to promote development by conferring priority or 'secured' creditor status to those who contribute labor or material to improve property. Under the common law, such contributors had the status of general or 'unsecured' creditors. 1-32 Alabama Property

10

Rights and Remedies § 32.1.  "When a mechanic's lien is filed by a person or entity, the mechanic's lien creates a legal encumbrance on the subject real property which may negatively affect the property owner or other interest holders in the subject real property such as a financial institution."  Kantack, 61 Ala. Law. at 202. Materialmen's liens in Alabama are codified at 1975 Ala. Code §§ 35-11-210 through 35-11-234.

Therefore, "[t]he whole theory of the statute is to give the material-man a preferred claim on a lot of land, for the amount he has contributed in improving that particular land, or the buildings situated thereon." Eufaula Water Co. v. Addyston Pipe & Steel Co., 89 Ala. 552, 556 (Ala. 1889).  R & H correctly assumes that it is a secured creditor if its lien has been perfected, and the government makes no argument to the contrary.

11

   B. <u>Secured creditors as purchasers for value</u>.

   The Eleventh Circuit has explicitly held that unsecured creditors cannot be considered bona fide purchasers under subsection (n)(6)(B) of 21 U.S.C. § 853(n) because "their interest lies against the debtor personally as opposed to any specific property...." <u>United States v. Watkins</u>, 320 F.3d 1279, 1284 (11th Cir. 2003). From this logic could follow the principle that parties with an interest in specific property--that is, secured creditors, including lienholders--may properly be considered purchasers for value under subsection (n)(6)(B).

   This principle has been made explicit in the Sixth Circuit, where "the bona fide purchaser exception of § 853(n)(6)(B) includes those individuals who purchase for value forfeitable property as innocent buyers or lienholders." <u>United States v. Harris</u>, 246 F.3d 566, 575 (6th Cir. 2001). This court agrees that R & H should be considered a purchaser for value under subsection

(n)(6)(B) if it is made a secured creditor by a state court's determination that it holds a valid lien against the center.

## C. Validity of the lien

The remaining and determinative question is whether R & H holds an enforceable materialmen's lien under Alabama law.  The parties frame this question as whether the lien has been perfected; R & H argues that it has, and the government argues that it has not, because the state court has yet to rule in the action to enforce the lien.

Nowhere in the Alabama materialmen's lien statute does the language of 'perfection' appear, and case law reflects ongoing confusion over the meaning and legal effect of the term 'perfected' in this context.  It is clear that a lien remains inchoate--or unattached to the property--until  "action is taken to perfect and enforce it."  1-32 Alabama Property Rights and Remedies § 32.11;

13

see also, e.g., <u>United States v. Costas</u>, 273 Ala. 445, 448 (Ala. 1962).  In other words, "the right to have the debt secured by the lien would be lost if there were noncompliance with the lien statutes or if the action were not brought on time."  1-32 Alabama Property Rights and Remedies § 32.1.

It is undisputed that a lien will be lost if at least three steps are not performed: (1) provision of statutory notice to the owner of the property pursuant to 1975 Ala. Code § 35-11-210; (2) filing of a verified statement of lien in the probate office of the county where the improvement is located pursuant to § 35-11-213; and (3) filing of a suit to enforce the lien within six months of the maturation of the debt pursuant to § 35-11-221. <u>Bailey Mortgage Co. v. Gobble-Fite Lumber Co.</u>, 565 So. 2d 138, 141 (Ala. 1990).

The first step in this process provides notice to property owners of a potential lien in the absence of a direct contractual relationship between the property

14

owners and the claimant.  Where, as here, the material
supplier (R & H) had a direct contractual relationship
with the owner (Carmichael), the statutory notice
requirement is of course satisfied, and a 'full price'
materialmen's lien may be asserted.  Kantack, 61 Ala.
Law. at 202.[3]

    The second step provides notice of the lien to all
other existing and potential interested parties.  1975
Ala. Code § 35-11-213; First Ave. Coal & Lumber Co. v.
Rimer, 222 Ala. 545, 547 (Ala. 1931) ("We can but think
the recorded statement is intended to give constructive

---

    3.  Two types of materialmen's liens are available
under Alabama law.  The first, known as a 'full price'
lien, allows the claimant to recover the full price of
its original contract so long as the property owner was
notified in writing of the materials that would be
furnished to the property before work began, as is the
case with a written contract.  1975 Ala. Code § 35-11-10;
Bailey, 565 So. 2d at 141; Kantack, 61 Ala. Law. 202.
The second type of lien, known as an 'unpaid balance'
lien, permits a claimant (a subcontractor or supplier
with no direct contractual relationship with the property
owner) to recover the amount of its contract so long as
that amount does not exceed the unpaid balance due from
the owner to the general contractor.  Only the first type
of lien is at issue in this case.

notice until the lien is satisfied."). The third step, imposing a time limitation on the filing of an enforcement action, in theory ensures the speedy disposition of the interests at stake. It is undisputed that R & H complied with the statutory requirements for each of these steps.

The Alabama Supreme Court has stated that, "The final step for perfection is to file suit in the circuit court of the county where the property is located." Bailey, 565 So. 2d at 143. R & H relies on this language to assert that, because it filed a lawsuit to enforce its claimed lien against the Carmichael Center, it has a perfected lien that should be validated as a property interest pursuant to subsection (n)(6)(B) of 21 U.S.C. § 853.

However, the government argues that the lien is not perfected until the state court renders its judgment enforcing the lien. In other words, although R & H complied with all statutory requirements, its lien must

fail because the federal case against Carmichael concluded (thereby transferring ownership of the property via forfeiture) before the state court case adjudicating the lien.

The government does not address the <u>Bailey</u> holding anywhere in its arguments, and instead relies on <u>Ex parte Grubbs</u>, 571 So. 2d 1119 (Ala. 1990), decided approximately four months after <u>Bailey</u>. In <u>Grubbs</u>, the Alabama Supreme Court interpreted 1975 Ala. Code § 35-11-224 to require that "liability for the debt be established and that a money judgment be entered against the debtor as a prerequisite to perfecting and enforcing the lien." <u>Id</u>. at 1120.[4]

---

4. 1975 Ala. Code § 35-11-224 reads:

"Any defendant, by appropriate plea, may put in issue the fact of indebtedness or the existence of the lien, or both, and may interpose any other defense applicable to the action; and if the court by its finding, or the jury by their verdict, as the case may be, ascertain that the plaintiff has a lien as claimed, judgment shall be entered (continued...)

17

This language appears to reflect the distinction between an action to establish a debt and an action to perfect and enforce a lien to secure that debt. If an underlying debt is contested, it is clear that a state court must first find that the debt exists before enforcing a lien (through sale of property) to satisfy the debt. It is not clear, however, that the acts required for perfection of a lien are necessarily the same as those required for enforcement of the lien. The language in Grubbs can be read to conflate these two processes; that is, that final money judgment is required before either perfection or enforcement can occur. Alternatively, the language can be read simply to note that a money judgment is required before both perfection

_____

4.   (...continued)
for the amount secured thereby, interest and costs, against the party liable for the same, and establishing the lien, and condemning the property to sale for the satisfaction thereof; but if the finding or verdict is for the plaintiff only on the issue of indebtedness, a judgment shall be entered in his favor for the amount thereof as in other cases."

and enforcement can occur, with the result, for example, that a money judgment could be required before enforcement but not be required before perfection, meaning the lien can be perfected before enforcement.

The second reading would reconcile the language in Grubbs with the language in Bailey, and the Alabama Supreme Court has reaffirmed, after Grubbs, the idea that the lien is perfected before enforcement:

> "[A materialman's] lien comes into existence immediately when one provides any materials or performs labor upon the property but remains inchoate unless a statement of lien is timely filed with the judge of probate of the county in which the property is situated (§ 35-11-213), and unless suit is timely filed to perfect the [materialman's] lien (§ 35-11-221). Once these two steps are timely undertaken, the lien relates back to the date that the materials or labor was provided, and the priority of the lien is determined according to § 35-11-211. Such a lien has priority over encumbrances attaching after the commencement of the work."

19

Metro Bank v. Henderson's Builders Supply Co., 613 So. 2d 339, 340 (Ala. 1993)(quoting Greene v. Thompson, 554 So.2d 376, 379 (Ala. 1989)).

However, the first reading of Grubbs (conflating the steps to perfection and enforcement) has been adopted by a lower court: "the Alabama Supreme Court has held that ... the lien is not perfected until the liability for the debt owed to the supplier is established and a money judgment is entered against the debtor." Burch v. First Coastal Bldg. Supply, Inc., 606 So. 2d 146, 148 (Ala. Civ. App. 1992).

Regardless of whether Grubbs and Bailey are reconcilable, the government cannot rely on Grubbs to argue that the transfer of ownership interest in the Center, alone, extinguishes a materialmen's lien when the transfer occurs prior to the state-court judgment. In Grubbs, a building company (contracting directly with the property owners) failed to pay for materials provided by two subcontractors in the construction of a house. The

subcontractors filed statements of lien against the property and sued the contractor and the property owners seeking enforcement of the liens, thereby presumably accomplishing the steps to perfection set forth in Bailey.[5]

    In the meantime, the contractor entered into bankruptcy proceedings, automatically staying the entry of judgment against it.  The Alabama Supreme Court found that the subcontractors were barred from obtaining a money judgment against the contractor by operation of the bankruptcy stay, and barred from obtaining a money judgment against the homeowners because there had been no direct contractual relationship between them.  Because no money judgment could be entered in the case, the liens could not be enforced, and the subcontractors were not

_____

    5.   The Grubbs decision cites Bailey only for the general proposition that "[m]aterialman's liens, being statutory creations ... are inchoate and will be lost if the lienors fail to perfect them according to the requirements of the statute."   Grubbs, 571 So. 2d at 1120.   Nowhere does the decision refer to or address Bailey's explicit discussion of when perfection is accomplished.

21

entitled to satisfaction of the liens through sale of the property.[6]

The Alabama Supreme Court recognized that this result frustrated the purpose of the materialmen's lien statute, which is of course to elevate persons who provide labor or material for the improvement of real estate from the status of general creditors to that of secured creditors. Nonetheless, because materialmen's liens are statutory in

_____

6.  It is far from clear that a bankruptcy in fact prevents the entry of a money judgment to enforce a materialmen's lien.  While 11 U.S.C. § 362(a)(4) stays lien-perfection actions after a bankruptcy filing, there is an exception to this rule for perfection actions brought pursuant to laws that permit property interests to relate back before the actual date of perfection. Alabama's materialmen's lien statute is such a law "because a properly perfected materialman's lien will relate back to the date materials were furnished at the construction site, even though the perfection takes place months later." In re Peek Constr. Co., 80 B.R. 226, 229 (Bankr. D. Ala.1986). See also 229 Main St. Ltd. Pshp. v. Mass. EPA (In re 229 Main St.), 262 F.3d 1, 4 (1st Cir. 2001)(holding that the automatic stay in a bankruptcy proceeding is not absolute because the bankruptcy code limits a debtor's ability to avoid statutory liens).

nature, the court held: "If a change in the statute is needed to protect a materialman when a money judgment cannot be entered against the debtor, that change must be made by the Legislature." Grubbs, 571 So. 2d at 1120-1121.

The central holding of Grubbs, therefore, is that an intervening event that prevents the adjudication of the underlying debt can thwart the enforcement of an otherwise valid lien. In the case at bar, the entry of money judgment to establish the debt and to enforce the lien is by no means impossible, it simply has not yet occurred. All statutory requirements have been met and a suit for enforcement timely filed.

The government's argument is that R & H's lien is extinguished because the government gained an ownership interest in the property before the state court ruled in the enforcement suit. This argument, in addition to expanding the reasoning in Grubbs well beyond the facts of that case, ignores the central purpose of any lien,

which is to preserve an interest in property and give notice to subsequent purchasers that they take the property subject to the lien.

Indeed, Alabama law establishes that even purchasers who acquire title after commencement of work on a property but before perfection of a materialmen's lien are bound by the lien if they had notice of the facts on which the lien was predicated. Benson Hardware Co. v. Jones, 223 Ala. 287, 289 (Ala. 1931), overruled on other grounds, Lily Flagg Bldg. Supply Co. v. J. M. Medlin & Co., 285 Ala. 402 (Ala. 1970). It follows that satisfaction of the statutory steps outlined in Bailey, including filing a verified statement of lien in the office of probate, gives notice to subsequent purchasers who then take the property subject to the lien. See Meads v. Dial Finance Co., 56 Ala. App. 84 (Ala. Civ. App. 1975) (holding that "[t]he right to a lien upon property arising from a contract between private parties may not be defeated merely by the subsequent transfer of

24

title to a governmental agency," so long as the agency has actual or constructive notice).

Therefore, the court finds that R & H's lien was not extinguished by Carmichael's conviction and the resulting transfer of property ownership to the government, which had knowledge of R & H's claim.[7]  The lien may not be enforceable until the state court renders a judgment, but the lien, perfected or not perfected yet, exists.[8]

_____

[7]    The government does not and cannot argue that it did not have actual notice of R & H'S interest.  Although the government's interest in the property technically predates the work performed by R & H by operation of the relation-back provision of 21 U.S.C. § 853(c), it is not disputed that R & H filed its lien statement before the government filed its lis pendens, and long before Carmichael's conviction effected the forfeiture of the property in favor of the government.

[8]    The court is also troubled that the government's argument (mere delay by the state court in bringing its case to conclusion would cut off R & H's lien interest), would not only deny an interest based on an arbitrary factor entirely outside of the parties' control (at least as far as the record before this court shows), it could also run up against the Anglo-American common-law maxim that "'the act of the court shall prejudice no one.'" Middleton v. Dan River, Inc., 617 F.Supp. 1206, 1222 (M.D. Ala. 1985), affirmed in relevant part, 834 F.2d 903, 911 (11th Cir. 1987).

## D. <u>Joinder Requirement</u>

However, the government also argues that, because R & H failed to join the government in the enforcement action, it would not be bound by a state-court judgment. 1975 Ala. Code § 35-11-223(a) provides that "all persons interested in the matter in controversy, or in the property charged with the lien, may be made parties; but such as are not made parties shall not be bound by the judgment or proceedings therein."

This provision has been interpreted to mean that "[if] a lien claimant desires his judgment to be superior to the interest of persons who have acquired their interest in the property after commencement of the work but prior to the filing of the lien statement, he must join them as parties when he files suit to enforce his lien within the six-month period, provided he has actual knowledge or constructive notice of the interest of such persons at the time he files his suit to enforce the lien." <u>Lily Flagg</u>, 285 Ala. at 407.

The government gained actual ownership of the center on the date of Carmichael's conviction, June 17, 2005, more than a year and a half after R & H filed its lien statement.[9] However, the government appears to argue that its lis pendens, filed before R & H's civil action, established a property interest and obligated R & H to join the government in the state-court action.

Under the common-law doctrine of lis pendens, the filing of a lawsuit placed any affected property in the legal custody of the court so as to protect the property pending final resolution of the case. As a necessary consequence, purchasers "were bound by the result of the litigation as it affected the property, though they might never have been joined as parties to the action or have known of the existence of the litigation." 1-5 Alabama

---

9. Upon Carmichael's conviction, the government's interest in the center related back to the time of the commission of acts giving rise to the forfeiture of the property, through operation of 21 U.S.C. § 853(c). As noted above, this relation back will not defeat the interests of bona fide purchasers without notice pursuant to 21 U.S.C. § 853(n)(6)(B).

Property Rights and Remedies § 5.13.  The lis pendens statute, codified at 1975 Ala. Code § 35-4-130 <u>et seq</u>., does not alter the substance of the common-law rule; rather, it mitigates the harsh effects of the rule by ensuring that purchasers have at least constructive notice of pending litigation through the filing of a lien statement in probate court.

The question of whether a lis pendens is an interest in property for the purposes of naming parties in an action to enforce a materialmen's lien pursuant to 1975 Ala. Code § 35-11-223, which appears to be a question of first impression in Alabama courts, is not properly before the court at this time.  The state court has yet to enter judgment establishing R & H's lien, and the government may yet be joined, or intervene, in that action to assert its interest in the property.  Even if it does so, it is unclear whether the state court will need to decide the status of a lis pendens, since the government's lis pendens was filed after R & H filed its

statement of lien.  Following <u>Lily Flagg</u>, this timing arguably absolves R & H from any obligation to join the government in the state-court action, even if the lis pendens is to be considered a valid property interest. Regardless, these issues will either be decided by the state court, or if the state court establishes R & H's lien without deciding the question of joinder, by this court at a later date.  For the time being, R & H's lien remains attached to the Carmichael Center.

## III. REMEDIES

R & H holds a materialmen's lien attached to the Carmichael Center, but which remains dependent upon a pending state-court decision for enforcement.  As a result, the government cannot vouchsafe clear title to potential purchasers of the property.  R & H recommends solving this problem through the entry of an order requiring the government to hold proceeds in the amount

of the lien from the forfeiture sale in escrow until the state court renders its judgment.

The court notes, however, that 1975 Ala. Code § 35-11-233(b) foresees precisely this situation, and provides for the transfer of a materialmen's lien on property to other security, in the form of money or a bond, deposited with the court in which the action is brought, pending judgment regarding the satisfaction of the lien. Such a transfer would presumably have the effect of clearing title to the property, and the court will request the views of the parties regarding this remedy in an accompanying order.

Additionally, the court will solicit the views of the parties regarding the amendment of the second preliminary order of forfeiture to reflect this contingent interest.


## IV. CONCLUSION

For the reasons discussed above, R & H's motion to alter will be denied to the extent it seeks validation of

its lien pursuant to subsection (n)(6)(A); the motion will be granted to the extent the court finds that R & H has met its burden of showing by a preponderance of the evidence that, pursuant to subsection (n)(6)(B), it holds a materialmen's lien that remains attached to the Carmichael Center pending final judgment of the state court before which the action to enforce the lien is pending.  The court will request the views of the parties regarding (a) amending the court's second preliminary order of forfeiture to reflect petitioner Reese & Howell Inc.'s contingent interest in the property pending final judgment in state court regarding enforcement of the lien and (b) clearing title to the relevant property such that interlocutory sale may proceed while protecting petitioner Reese & Howell Inc.'s contingent interest through preservation of a sum equal to the claimed lien.

An appropriate order will be entered.

DONE, this the 7th day of June, 2006.

    /s/ Myron H. Thompson    <br>
UNITED STATES DISTRICT JUDGE